961 A.2d 66

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Michael FITHIAN, Appellee.**

**Commonwealth of Pennsylvania, Appellant**

v.

**Edward Borzelleca, Appellee.**

Supreme Court of Pennsylvania.

Argued May 13, 2008.

Decided Dec. 17, 2008.

John F.X. Reilly, Media, George Michael Green, for the Com. of PA, appellant.

Patricia Eileen Coonahan, Montgomery County Dist. Attorney's Office, for the Com. of PA, Montgomery County Dist. Attorney's Office, appellant amici curiae.

Jonathan J. Sobel, Galerman & Tabakin, LLP, Philadelphia, for Michael Fithian, appellee.

Francis John Genovese, Solomon, Berschler, Warren, Schatz, Flood & Monaghan, P.C., Norristown, for Edward Borzelleca, appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## *OPINION*

Justice TODD.

In this appeal by allowance, we interpret for the first time the General Assembly's 2002 amendments to 18 Pa.C.S.A. § 110, commonly known as the compulsory joinder statute. Generally speaking, the compulsory joinder statute sets forth the requirements for when a current prosecution is precluded due to a former prosecution for a different offense. For the reasons set forth below, we conclude the Superior Court properly found that the instant prosecution for criminal conspiracy was barred by the compulsory joinder statute because the offenses "occurred within the same judicial district" as a former prosecution. 18 Pa.C.S.A. § 110(1)(ii). Contrary to the Superior Court, however, we also find the offenses of possession of a controlled substance, possession with intent to deliver a controlled substance, and possession of drug paraphernalia did not occur in the same judicial district as the prior prosecution, and thus, were not barred by Section 110. Therefore, we affirm in part and reverse in part the order of the Superior Court.

The complexity of the background to the instant appeal requires a full recitation of the underlying facts and procedural history. The trial court found in relevant part that on June

24, 2003, Michael Boudwin, a Detective working for the Delaware County Criminal Investigation Division, contacted Montgomery County Detective Reginald Roberts and informed him that he had information concerning cocaine trafficking by Appellee Edward Borzelleca, a Montgomery County resident. Detective Boudwin described a meeting an undercover detective and Borzelleca had planned on June 26, 2003 at Barnaby's, a restaurant located in Havertown, Delaware County. Detective Boudwin informed Detective Roberts that Borzelleca owned a Subaru automobile and that Borzelleca would travel in his car from his Montgomery County residence to the meeting at Barnaby's.

On June 26, 2003, at 2:15 p.m., Montgomery County police set up a surveillance of Borzelleca's residence. Detective Boudwin spoke with Detective Roberts and told him that Borzelleca planned to meet with his supplier known as "Mike"—Appellee Michael Fithian—and thereafter travel with Fithian from Montgomery County to Delaware County to meet with Detective John Newell, an undercover detective employed by the Delaware County Criminal Investigation Division. At 4:00 p.m., Borzelleca, while at his Montgomery County residence, telephoned Detective Newell to arrange for the sale of two ounces of cocaine to Detective Newell for $1,900. The trial court noted that while Borzelleca told Detective Newell who the men wanted to meet at Barnaby's, it was Detective Newell that requested Borzelleca and Fithian come to Delaware County to Barnaby's to make the sale. At 4:30 p.m., Fithian called Detective Newell to ask him to "front" the money. Detective Newell was to ride with Borzelleca and Fithian, who was to join them, back to Montgomery County.

At 4:48 p.m., Montgomery County police observed Borzelleca leave his residence and followed him to a street address in Flourtown, Montgomery County. There, the police saw Borzelleca meet with Fithian. Thereafter, Fithian was seen entering a Dodge pickup truck, and Fithian followed Borzelleca's vehicle down Route 476 to Barnaby's.

At 5:30 p.m., Borzelleca and Fithian met with Detective Newell at Barnaby's. After a brief conversation, Borzelleca

walked to Fithian's Dodge truck where Fithian appeared to be removing packaging material. Borzelleca and Fithian departed in Borzelleca's Subaru, and Detective Newell followed in his vehicle. Borzelleca and Fithian planned to drive both vehicles to Montgomery County and purchase two ounces of cocaine for Detective Newell and one ounce for themselves. While in Montgomery County, the vehicles stopped at a bar so that Borzelleca and Fithian could obtain money to buy the cocaine.

The vehicles then traveled out of Montgomery County, and entered Philadelphia County where Borzelleca, Fithian and Detective Newell made the actual purchase of the cocaine. Once in Philadelphia County, Borzelleca, Fithian and Detective Newell met with the supplier of the cocaine, although there is some inconsistency as to what occurred. According to a report prepared by Montgomery County Detective Roberts, the supplier sold one ounce of cocaine to Borzelleca and Fithian, and two ounces of cocaine directly to Detective Newell. Detective Newell's probable cause affidavit, however, offers a slightly different version of events. Specifically, Detective Newell contended that Fithian gave Borzelleca three bags of cocaine, and that Borzelleca handed two bags of cocaine to Detective Newell. After inspecting the cocaine, Detective Newell gave Borzelleca $1,900, and Borzelleca handed the money to Fithian. Borzelleca told Detective Newell that the third bag of cocaine was for the person at the bar. Without reconciling the discrepancy, the trial court noted that both versions of the events were consistent that the transfer occurred in Philadelphia County and that Detective Newell did not receive the cocaine or transfer the money in Delaware County.

Thereafter, Borzelleca and Fithian returned to Montgomery County in the Subaru and were stopped on Route 476 in Montgomery County by the Pennsylvania State Police. The police recovered approximately one ounce of cocaine from the interior of the Subaru.

Borzelleca and Fithian were arrested and, on July 3, 2003, charged in Montgomery County for crimes concerning the

cocaine in the vehicle. The Delaware County District Attorney's Office filed a criminal complaint the same day charging both men with criminal conspiracy, possession of a controlled substance, and possession with intent to deliver a controlled substance. Fithian was also charged with possession of drug paraphernalia. The Delaware County complaints alleged that Borzelleca and Fithian arranged the sale of two ounces of cocaine in Delaware County with Detective Newell, and the Delaware County District Attorney sought to prosecute them for conspiracy and the delivery of the cocaine in Philadelphia.

On January 26, 2004, Borzelleca and Fithian each entered a guilty plea of one count of possession with intent to deliver and one count of criminal conspiracy in Montgomery County, with respect to the bag of cocaine seized upon their arrest.[1] The men were sentenced on April 2, 2004. At the time Borzelleca and Fithian were sentenced in Montgomery County, the criminal proceedings in Delaware County were still pending.

Thereafter, Borzelleca and Fithian filed motions to dismiss the Delaware County charges arguing that the prosecution in Delaware County was barred pursuant to 18 Pa.C.S.A. § 110; after a hearing, the trial court granted the motions. Before the trial court, the Commonwealth contended, *inter alia*, that the Delaware prosecution did not arise from the same criminal episode occurring in the same judicial district as the former Montgomery County prosecution. The trial court retraced the chain of events noted above and concluded that the conspiracy to sell the two ounces of cocaine to Detective Newell occurred in both Delaware and Montgomery County. That being the case, the conspiracy that formed the basis for the Delaware County prosecution occurred within the same judicial district as the Montgomery County prosecution. This satisfied one of the requirements of the compulsory joinder statute, described in greater detail below. According to the trial court, the

1. In Montgomery County, Borzelleca was charged with criminal conspiracy, possession of a controlled substance; possession with intent to deliver a controlled substance; and possession of drug paraphernalia. Fithian was charged with the same crimes.

Montgomery County officials elected to prosecute the men for the one ounce of cocaine seized in the traffic stop on Route 476 and either expressly or tacitly agreed to allow Delaware prosecutors to prosecute the balance of Borzelleca and Fithian's criminality. The trial court concluded the subsequent Delaware County prosecution was barred by Section 110.

On appeal, the Superior Court initially adopted the trial court opinion as its own for purposes of appellate review, and thus affirmed. *Commonwealth v. Fithian*, 909 A.2d 870 (Pa.Super.2006). The Commonwealth sought appeal to our Court. We granted the petition for allowance of appeal and remanded the matter to the Superior Court for consideration of our then recent decision in *Commonwealth v. Nolan*, 579 Pa. 300, 308 n. 7, 855 A.2d 834, 839 n. 7 (2004), which, in footnote 7, spoke to the 2002 amendments to the compulsory joinder statute.[2] *Commonwealth v. Fithian*, 591 Pa. 655, 921 A.2d 1182 (2007).[3]

On remand, the Superior Court acknowledged footnote 7 in *Nolan*, considered it to be *obiter dicta*, and concluded that elements of the conspiracy occurred in both Montgomery County and Delaware County, and thus the conspiracy to sell the cocaine "occurred within the same judicial district as the former prosecution." That being the case, and finding the

**2.** Footnote 7 states:

> At the time appellee was convicted, prong four of the compulsory joinder test was "all charges were within the jurisdiction of a single court." However, in 2002, the General Assembly amended § 110 and replaced the quoted language with "occurred within the same judicial district as the former prosecution." P.L. 481, No. 82, § 1. The new language requires that a case must originate in the same judicial district and be further-prosecuted, based upon events from the same criminal episode, in the same judicial district. Appellee would not meet the requirements of this element had the current wording of the statute been in place at the time of his trial; Lackawanna County and Luzerne County are not in the same judicial district and a prosecution in one and then the other would not be contravened by § 110's current language.

*Nolan*, 579 Pa. at 308 n. 7, 855 A.2d at 839 n. 7.

**3.** Justice Saylor dissented to the Court's remand order, offering that the order's citation to footnote 7 in *Nolan* was *obiter dicta* and would serve only to confuse matters. *Fithian*, 591 Pa. at 655, 921 A.2d at 1183.

other requirements for mandatory joinder to be satisfied, the court found that prosecution for the offense was barred by the compulsory joinder statute. Additionally, as to the non-conspiracy charges, the court reasoned that they could have been brought in Montgomery County and there was no reason not to have consolidated all charges against Fithian and Borzelleca in Montgomery County. *Commonwealth v. Fithian*, 932 A.2d 232 (Pa.Super.2007).

■ We granted allocatur as to the single issue, as stated by the Commonwealth, of "Whether the Superior Court misapplied the unambiguous language of the 2002 amendment to the compulsory joinder rule, 18 Pa.C.S.A. § 110, that limited the rule by requiring joinder of only crimes that 'occurred within the same judicial district' as a former prosecution, an amendment that this Court has not yet authoritatively interpreted?" *Commonwealth v. Fithian*, 596 Pa. 260, 942 A.2d 894 (2008).[4]

The compulsory joinder statute is a legislative mandate that a subsequent prosecution for a violation of a provision of a statute that is different from a former prosecution, or is based on different facts, will be barred in certain circumstances. 18 Pa.C.S.A. § 110. As amended in 2002, Section 110 states in relevant part:

### § 110. When prosecution barred by former prosecution for different offense

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) **The former prosecution resulted in an acquittal or in a conviction** as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) **and the subsequent prosecution is for:**

4. As the issue before our Court raises a question of law, our standard of review is *de novo*, and our scope of review is plenary. *Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659 (2002).

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) **any offense based on the same conduct or arising from the** same **criminal episode, if such offense** was known to the appropriate prosecuting officer at the time of the commencement of the first trial and **occurred within the same judicial district as the former prosecution** unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct, unless:

(A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(B) the second offense was not consummated when the former trial began.

18 Pa.C.S.A. § 110 (emphasis added).

■ As has been summarized by our Court, Section 110(1)(ii), which is the focus in this appeal, contains four requirements which, if met, preclude a subsequent prosecution due to a former prosecution for a different offense:

(1) the former prosecution must have resulted in an acquittal or conviction;

(2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;

(3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and

(4) the current offense occurred within the same judicial district as the former prosecution.

*See Nolan*, 579 Pa. at 308, 855 A.2d at 839; *Commonwealth v. Hockenbury*, 549 Pa. 527, 533, 701 A.2d 1334, 1337 (1997). Each prong of this test must be met for compulsory joinder to apply.

The parties agree, and the lower tribunals accepted, that the first three requirements for barring the subsequent Delaware County prosecution have been satisfied, and thus are not at issue in this appeal. Accordingly, the only issue before us is whether the offenses prosecuted by Delaware County "occurred within the same judicial district" as the former prosecution—Montgomery County.

The Commonwealth, with *amicus curiae* Montgomery County District Attorney's Office, offers a limited interpretation of Section 110(1)(ii). Specifically, the Commonwealth maintains that the clear and unambiguous language of the statute only requires joinder of those offenses that occurred wholly within the same judicial district as the former prosecution. Stated another way, if the subsequent prosecution is based upon conduct that did not occur entirely within the fixed limits of the judicial district in which the former prosecution took place, the later prosecution need not be joined in the former prosecution and is not barred by the compulsory joinder statute.

Furthermore, the Commonwealth points to footnote 7 of our *Nolan* opinion and suggests that while not determinative, as the amended statute was not before the Court in that decision, the footnote is an accurate statement of the law. The Commonwealth notes that our Court in *Nolan* stated the amended language "requires that a case must originate in the same judicial district and be further-prosecuted, based upon events from the same criminal episode, in the same judicial district." *Nolan*, 579 Pa. at 308 n. 7, 855 A.2d at 839 n. 7. In doing so, the Commonwealth asserts that, while pursuant to the teaching of our earlier decision in *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1997) (plurality), discussed in full below, charges arising from a single criminal episode occurring in multiple counties *may* be brought before any court of common pleas because courts of common pleas possess statewide jurisdiction. Thus, the amended compulsory joinder statute does not *require* a multi-district criminal episode to be charged in one county.

According to the Commonwealth, the Montgomery County offenses at issue, conspiracy and possession with the intent to deliver, involved the one ounce bag of cocaine seized from Borzelleca and Fithian on Route 476 in Montgomery County. The Delaware County offenses of conspiracy and intent to deliver involved the delivery of two different bags of cocaine to Detective Newell. The Delaware County offenses spanned Montgomery County, Delaware County, and Philadelphia County. Thus, the Commonwealth contends the Delaware County offenses did not occur solely within the fixed limits of the same judicial district as the former prosecution in Montgomery County; rather, the conduct occurred in Delaware, Montgomery, and Philadelphia Counties. As the conduct that formed the basis for the Delaware County offenses brought in that judicial district did not occur in the same judicial district as the former prosecution, Montgomery County, the fourth prong of Section 110(1)(ii) is not satisfied. Based upon this reasoning, the Commonwealth argues that the lower tribunals erred and the Delaware County prosecution is not barred by the compulsory joinder statute.

Borzelleca and Fithian respond that by applying the clear terms of the amended language of Section 110(1)(ii), the requirement that the current offenses occur in the same judicial district as the former prosecution is satisfied in this case: the offenses being prosecuted in Delaware County occurred within the same judicial district as the former prosecution—Montgomery County—and thus are barred by Section 110. Borzelleca and Fithian argue that the offenses that form the basis of the prosecution in Delaware County originated in Montgomery County with telephone calls from Borzelleca and Fithian to Detective Newell. The only portion of the transactions at issue taking place in Delaware County was the meeting between Borzelleca, Fithian, and Detective Newell at Barnaby's. The men then returned to Montgomery County and the actual drug transaction occurred in Philadelphia County. Therefore, according to Fithian and Borzelleca, the conduct which formed the basis of the charges in Delaware County originated in Montgomery County and then spanned

Delaware, Montgomery, and Philadelphia Counties. Thus, the offenses in the Delaware County prosecution occurred within Montgomery County, the judicial district of the former prosecution.

As our analysis involves interpreting the compulsory joinder statute, we necessarily turn to the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501 *et seq.* The Act is clear that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). Generally, the best indication of the General Assembly's intent is the plain language of the statute. *Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see Commonwealth v. Conklin,* 587 Pa. 140, 152, 897 A.2d 1168, 1175 (2006). Consequently, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of statutory construction factors found in Section 1921(c). 1 Pa.C.S.A. § 1921(c); *Koken v. Reliance Ins. Co.,* 586 Pa. 269, 288, 893 A.2d 70, 81 (2006).

Additionally, penal statutes are to be strictly construed. 1 Pa.C.S.A. § 1928(b)(1); *Commonwealth v. Booth,* 564 Pa. 228, 234, 766 A.2d 843, 846 (2001); *Commonwealth v. Wooten,* 519 Pa. 45, 53, 545 A.2d 876, 879 (1988). Yet, the need for strict construction does not require that the words of a penal statute be given their narrowest meaning or that legislative intent should be disregarded. *Id.* at 53, 545 A.2d at 880; *Commonwealth v. Gordon,* 511 Pa. 481, 487, 515 A.2d 558, 561 (1986). It does mean, however, that, if an ambiguity exists in the verbiage of a penal statute, such language should be interpreted in the light most favorable to the accused. *Booth,* 564 Pa. at 234, 766 A.2d at 846; *Wooten,* 519 Pa. at 53, 545 A.2d at 879. More specifically, "where doubt exists concerning the proper scope of a penal statute, it is the

accused who should receive the benefit of such doubt." *Booth,* 564 Pa. at 234, 766 A.2d at 846; *Commonwealth v. Allsup,* 481 Pa. 313, 317, 392 A.2d 1309, 1311 (1978).

Finally, the Crimes Code itself supplies guidance as to the construction of the provisions of the Code: "The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S.A. § 105.

With these tenets in mind, we turn to an analysis of the words employed by the General Assembly in discerning its intent. As a threshold matter, we focus on the meaning of "judicial district." We then consider whether the offenses at issue in this appeal "occurred in the same judicial district."

While the term "judicial district" is not defined in the Crimes Code, the General Assembly has defined it elsewhere. Specifically, the Judicial Code defines "judicial district" as "[a] district established by section 901 [42 Pa.C.S.A. § 901] (relating to judicial districts) for the election of one or more judges of a court of common pleas." 42 Pa.C.S.A. § 102. In turn, Section 901 states "[t]he Commonwealth is divided into 60 judicial districts" and lists the 60 judicial districts, which to a great extent, correspond directly with the geographic boundaries of the Commonwealth's counties.[5] 42 Pa.C.S.A. § 901. There are, however, judicial districts comprised of more than one county. Thus, there are single county districts and multicounty districts. 42 Pa.C.S.A. § 911(b) and (c). While a judicial district may encompass more than one county, there is one court of common pleas for each judicial district. 42 Pa.C.S.A. § 911.

**5.** The exceptions are the 17th district comprised of the counties of Snyder and Union; the 26th district, comprised of the counties of Columbia and Montour; the 37th district, comprised of the counties of Forest and Warren; the 39th district, comprised of the counties of Juniata and Perry; the 44th district, comprised of the counties of Sullivan and Wyoming; and the 59th district, comprised of the counties of Cameron and Elk.

■ Based upon the plain words of these statutory provisions, we have no problem in concluding the General Assembly intended that, for purposes of the compulsory joinder statute, the phrase "judicial district" means the geographical area established by the General Assembly in which a court of common pleas is located.[6]

We next turn to whether the current offenses "occurred within the same judicial district" as the prior prosecution. Again, we employ the rules of statutory construction to aid us in our analysis.

The parties each argue that the words of the statute are clear. The difficulty is that each party comes to a different conclusion as to the meaning of those words. Specifically, each party makes reasonable arguments, based upon the language of the statute, regarding the import of the newly amended language. The Commonwealth offers a broad interpretation—emphasizing that the offenses must occur solely within the same judicial district to satisfy the compulsory joinder rule and that if the offenses span more than one judicial district, they need not be barred by a prior prosecution. Conversely, Borzelleca and Fithian contend the relevant language should be narrowly construed. Thus, according to Borzelleca and Fithian, if any act which underlies the current offense occurred within the same judicial district as the former prosecution, the offenses must be joined.

Based upon our consideration of the language employed by the legislature and the parties' assertions, we find that both parties' readings of the words of the statute provide a reasonable interpretation of the phrase in question; thus, we conclude that the words of the statute are not free from all ambiguity. Accordingly, we examine the factors found in 1 Pa.C.S.A. § 1921(c) to ascertain the intent of the legislature.[7]

6. This view has been adopted by our intermediate courts as well. *See Commonwealth v. Pries,* 861 A.2d 951, 954 (Pa.Super.2004) ("The certified record demonstrates that all of the charges arose in Bucks County. Bucks County comprises a single judicial district, the Seventh District.").

7. The factors which may be considered in discerning the General Assembly's intent include:

Specifically, here we discern the legislative intent by turning to the occasion and necessity for the amendment, the circumstances under which it was enacted, the object to be obtained by this amendment, and the former law regarding this provision. 1 Pa.C.S.A. § 1921(c)(1), (2), (4), and (5).

The purpose of the compulsory joinder statute, viewed as a whole, is twofold: (1) to protect a defendant from "the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode;" and (2) to ensure "finality without unduly burdening the judicial process by repetitious litigation." *Commonwealth v. Failor*, 564 Pa. 642, 647, 770 A.2d 310, 313 (2001); *Commonwealth v. Hude*, 500 Pa. 482, 489, 458 A.2d 177, 180 (1983).

Focusing on the specific phrase at issue, however, it is apparent the purpose of this language is to place some boundaries on the breadth of the offenses subject to compulsory joinder, that is, only those occurring "within the same judicial district" as a former prosecution. Indeed, the structure of the compulsory joinder statute precludes certain prosecutions only if they satisfy this requirement, as well as the other requirements, of Section 110(1)(ii).

Related to this limiting purpose of Section 110(1)(ii), courts of our Commonwealth have had occasion to interpret this prong of the compulsory joinder statute as previously enacted. We believe this history to be highly instructive regarding the legislature's intent in amending Section 110(1)(ii).

Specifically, prior to 2002, Section 110(1)(ii) required, in relevant part, that "all charges were within the jurisdiction of a single court." The Superior Court consistently interpreted

(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be obtained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S.A. § 1921(c).

this language as meaning the charges that required joinder were circumscribed by county territorial boundaries. *See, e.g., Commonwealth v. Cromwell,* 329 Pa.Super. 329, 478 A.2d 813 (1984) (burglaries committed in Somerset and Bedford Counties not required to be consolidated for trial in Somerset County where some of the burglaries took place in Bedford County, even though all burglaries were part of same criminal episode); *Commonwealth v. Nichelson,* 294 Pa.Super. 438, 440 A.2d 545 (1982) (prosecution for offenses occurring in Philadelphia County, including theft, robbery, and conspiracy to commit the same, was not barred by previous prosecution because charged crimes occurred solely in that county); *Commonwealth v. Harris,* 275 Pa.Super. 18, 418 A.2d 589 (1980) (prosecution in Montgomery County not barred by prior convictions in Philadelphia County which arose from same criminal episode as acts in subsequent prosecution occurred solely in Montgomery County).

In 1997, our Court had its first opportunity to interpret the former statutory language. In *Commonwealth v. McPhail, supra,* we considered the question of whether four drug transactions, three in Washington County and one in Allegheny County, all constituting a single criminal episode, were within the "jurisdiction of a single court." A plurality of our Court concluded that courts of common pleas enjoy jurisdiction all over the Commonwealth—that is, the subject matter jurisdiction of the courts of common pleas is general and not limited to the territory of the county wherein the court sits. Our Court reasoned that under Section 110, all charges were in the "jurisdiction of a single court." Thus, we concluded that the Washington County offenses and the Allegheny County offenses should have been joined in a single trial. As a practical matter, the Court's interpretation in *McPhail* led to the "jurisdiction" prong of Section 110(1)(ii) being met in every case.

In direct response to our Court's decision in *McPhail,* the General Assembly amended Section 110(1)(ii) to its current language. Act of 2002, June 28, P.L. 481, No. 82, § 1. Specifically, the legislature in paragraph (1)(ii) substituted the

phrase "was within the jurisdiction of a single court" with "occurred within the same judicial district as the former prosecution."

The 2002 amendments, coming as a rejoinder to our Court's decision in *McPhail*, make the legislature's intent manifest. In light of this history, it is clear to us that the General Assembly intended to incorporate, or perhaps re-incorporate, a geographic component in determining which offenses are precluded because of a former prosecution. That is, the legislature intended that the compulsory joinder statute be limited to mandating joinder only of those offenses occurring in a single judicial district.

While it is clear the legislature intended geography to be a factor in determining what prosecutions are subject to the compulsory joinder statute, the legislature, in its newly enacted language, did not speak specifically to multi-district criminal episodes, that is, offenses in which the underlying conduct spans more than one judicial district, as is the case in this appeal.

In discerning the intent of the General Assembly regarding multi-district criminal episodes, we are mindful of not only the import of the legislature's reaction to our Court's elimination of geographic boundaries in *McPhail*, but also the overarching purposes of the compulsory joinder statute—its twin aims— protection of a defendant from harassment and assuring the conservation of judicial resources, as well as our legislature's directive that penal statutes are to be interpreted in the light most favorable to the accused. 1 Pa.C.S.A. § 1928(b)(1); *Booth*.

 Reconciling and giving vitality to all of these considerations, we hold the General Assembly intended to preclude from the reach of the compulsory joinder statute those current offenses that occurred wholly outside of the geographic boundaries of the judicial district in which the former prosecution was brought, even though part of a single criminal episode. This construction is entirely consistent with the 2002

amendments negating *McPhail,* our recent decision in *Nolan,*[8] as well as the pre-*McPhail* Superior Court case law noted above. We also find, however, that the compulsory joinder statute extends to those offenses which occurred in more than one judicial district, when one of those judicial districts was where the former prosecution was brought. This is the construction that best serves the twin aims of Section 110.

We now apply our interpretation of the amended compulsory joinder statute to the offenses at issue in the matter *sub judice.* The trial court found the events at issue originated with Borzelleca and Fithian engaging in telephone conversations with Detective Newell during which the two Appellees were at locations in Montgomery County. Prior to their meeting with Detective Newell, Borzelleca and Fithian spoke with one another and met in Montgomery County. While Detective Newell requested that Borzelleca and Fithian come to Delaware County even though they told him the supplier of the cocaine was in Montgomery County, this was the only activity that occurred exclusively in Delaware County. After meeting at Barnaby's (in Delaware County), Detective Newell, Borzelleca and Fithian drove in two separate cars to a bar in Montgomery County to secure money for the drug purchase. The drug transaction was finalized in Philadelphia County when the drugs Detective Newell arranged to purchase were delivered to him. At that point, Detective Newell returned to Delaware County, and Fithian and Borzelleca drove to Montgomery County, where they were arrested.

As noted above, the one ounce of cocaine retained by Appellees formed the basis of the charges against them in the former prosecution in Montgomery County, which resulted in their guilty pleas to possession with intent to deliver and

8. While *Nolan* turned upon whether certain conduct constituted a single criminal episode, in discussing the 2002 amendments to the compulsory joinder statute which were not at issue in the appeal, we focused upon a case being prosecuted "based upon events from the same criminal episode, in the same judicial district." *Nolan,* 579 Pa. at 308 n. 7, 855 A.2d at 839 n. 7. In *Nolan,* the subsequent prosecution at issue was for "those crimes which took place solely within Luzerne County." *Id.* at 302, 855 A.2d at 835.

criminal conspiracy.[9] Two ounces of cocaine purchased by Detective Newell formed the basis of the Delaware County prosecution which was for the offenses of criminal conspiracy,[10] possession of a controlled substance,[11] possession with intent to deliver a controlled substance,[12] and possession of drug paraphernalia which was filed only against Fithian.[13]

Concerning the Delaware County charge of criminal conspiracy, we note that a prosecution for criminal conspiracy may be brought in any county where the unlawful combination was formed, or in any county where an overt act was committed by any of the conspirators in furtherance of the

9. 35 P.S. § 780–113(a)(30); 18 Pa.C.S.A. § 903.

10. 18 Pa.C.S.A. § 903(a) provides:
A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
(2) agrees to aid such person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
Moreover, "No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired." Id. § 903(e).

11. 35 P.S. § 780–113(a)(16) prohibits:
(16) Knowing or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

12. 35 P.S. § 780–113(a)(30) prohibits:
(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

13. 35 P.S. § 780–113(a)(32) prohibits:
The use of, or possession with intent to use, drug paraphernalia for the purpose of ... packing, repacking, storing, containing, concealing ... a controlled substance in violation of this act.

unlawful combination. *Commonwealth v. Thomas,* 410 Pa. 160, 164, 189 A.2d 255, 258 (1963). As a corollary, we conclude that a conspiracy "occurs" in any of these locales. It is clear from the above that the offense of criminal conspiracy to deliver the two ounces of cocaine spanned Montgomery, Delaware, and Philadelphia Counties. As this is the case, the offense of conspiracy to deliver two ounces of cocaine to Detective Newell "occurred within the same judicial district as the former prosecution" for the conspiracy to deliver one ounce of cocaine—Montgomery County. Therefore, consistent with the conclusions of the lower tribunals in this matter, we find that the Delaware County conspiracy offense is barred by the compulsory joinder statute.

With respect to the Delaware County charges of possession of a controlled substance, possession with intent to deliver a controlled substance, and possession of drug paraphernalia, however, we find that these offenses took place wholly within the boundaries of Philadelphia County. Rather than engaging in an analysis of where the offenses occurred, the lower tribunals reverted to an analysis of where the non-conspiracy charges could have been brought, concluding that they could have been brought in Montgomery County and, accordingly, that there was no reason not to have consolidated all charges against Fithian and Borzelleca in Montgomery County. While it may be true that all the charges could have been brought in Montgomery County, this is not the proper analysis. Section 110 is a statute of preclusion due to a former prosecution. As noted above, the proper analysis, pursuant to our interpretation of Section 110(1)(ii), focuses upon whether the offense occurred within the same judicial district. As these offenses took place solely within Philadelphia County, they did not occur "within the same judicial district as the former prosecution," Montgomery County. Therefore, the Delaware County prosecution for the charges of possession of a controlled substance, possession with intent to deliver, and possession of drug paraphernalia, is not barred by the compulsory joinder statute.[14]

14. It appears from our review of the original record that the criminal information filed in Delaware County also included a charge against

In sum, based upon the above, we conclude that the prosecution for the offense of criminal conspiracy brought in Delaware County is barred by the compulsory joinder rule. The prosecution for possession of a controlled substance, possession with intent to deliver a controlled substance, and possession of drug paraphernalia, however, is not precluded. Thus, the order of the Superior Court is hereby affirmed in part and reversed in part. The matter is remanded to the Superior Court for proceedings consistent with our opinion.

Jurisdiction relinquished.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.

Borzelleca for violation of 18 Pa.C.S.A. § 7512 (use of a communication facility, here, a telephone, to commit a crime—delivery of a controlled substance). This charge was not mentioned or asserted by any party, was not referred to in the reproduced record, and was not discussed by the lower tribunals. Therefore, while it would appear based upon the facts stated above that this offense occurred in Montgomery County, and thus would be barred by the compulsory joinder statute, we find that the Commonwealth, as Appellant herein, has waived any assertions regarding this charge.