J-A15035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TEMILE KAHLIQUE FAISON | : | No. 1348 MDA 2024 |

Appeal from the Order Entered September 16, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001542-2024

BEFORE:  BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:　　**FILED: AUGUST 18, 2025**

The Commonwealth appeals from the order entered in the Court of Common Pleas of York County, which granted Appellee Temile Kahlique Faison's omnibus pre-trial motion to bar prosecution on the grounds that the Commonwealth violated the compulsory joinder rule as codified in 18 Pa.C.S.A. § 110.  After a careful review, we reverse and remand for reinstatement of the charges.

The relevant facts and procedural history are as follows: On May 12, 2022, the police filed a criminal complaint at Incident Number 56-22-003730 charging Faison with disorderly conduct and possession of drug

_____

[*] Former Justice specially assigned to the Superior Court.

paraphernalia.[1]  In the affidavit of probable cause, the affiant, York City Police Detective Christopher Thompson, relevantly indicated the following:

> On 5/11/2022, at approximately 1521 hours, I was working a VIU[2] detail in the city. I was operating unmarked unit #48 with PO Nothstein in the front passenger seat and JPO Donnelly in the back.  PO Fouad was in the area of the 500 block of North Pershing Avenue when he observed a wanted person, Michael Pagan.  There was another male with Pagan who was later identified as Temile Faison.
>
> PO Fouad called this out over the radio and units responded. When officers attempted to stop Pagan, both males fled on foot across North Pershing Avenue.  They ran down a dirt path on the south side of Willis Run (creek).  During the foot pursuit, I observed Faison running with a black fanny pack.  The males ran into the parkway projects, across Willis Lane, and into a house. While running, Faison discarded his black fanny pack.  Officers had to chase the males into the residence.  Both males were apprehended inside of [a house on] Willis Lane.
>
> I went back and retrieved the fanny pack.  Inside the fanny pack, I located a black digital scale with marijuana residue on it.

Criminal Complaint, filed 5/12/22, affidavit of probable cause (footnote added).

Thereafter, at trial court docket number CP-67-CR-0003225-2022 ("3225-2022"), the Commonwealth filed an Information charging Faison with disorderly conduct and possession of drug paraphernalia.  On August 18, 2022, Faison entered a negotiated guilty plea to the sole charge of possession

---

[1] 18 Pa.C.S.A. § 5503(a)(4) and 35 P.S. 780-113(a)(32), respectively.

[2] "VIU" stands for "Violence Intervention Unit." N.T., 9/16/24, at 41.  The VIU focuses on high crime areas and gang members.  *Id.*  The York City Police Officers team up with officers from probation, parole, and the prison to conduct details throughout the city to suppress violence. *Id.* at 42.

of drug paraphernalia, and in exchange, the disorderly conduct charge was *nolle prossed*. The guilty plea included a sentencing agreement that Faison would be sentenced to one year of probation, and pay court costs, to run concurrently to a sentence Faison was serving for a separate probation revocation matter. The trial court accepted the negotiated guilty plea agreement, and on that same date, sentenced Faison to one year of probation, plus court costs. Faison did not appeal the judgment of sentence entered at trial court docket number 3225-2022.

On March 11, 2024, at the same Incident Number (56-22-003730), the police filed a criminal complaint against Faison charging him with three firearm offenses: possession of firearms prohibited, firearms not to be carried without a license, and prohibited offensive weapons.[3] Specifically, in the affidavit of probable cause, the affiant, Detective Thompson averred, in relevant part, the following:

> On 5/11/2022, at approximately 1521 hours, I was working a VIU detail in the city. I was operating unmarked unit #48 with PO Nothstein in the front passenger seat and JPO Donnelly in the back. PO Fouad was in the area of the 500 block of North Pershing Avenue when he observed a wanted person, Michael Pagan. There was another male with Pagan who was later identified as Temile Faison.
>
> PO Fouad called this out over the radio and units responded. When officers attempted to stop Pagan, both males fled on foot across North Pershing Avenue. They ran down a dirt path on the south side of Willis Run (creek). The males ran into the parkway projects, across Willis Lane, and into a house. Officers had to

---

[3] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 908(a), respectively.

- 3 -

chase the males into the residence. Both males were apprehended inside of [a house on] Willis Lane.

Officers began canvassing the area for any items that may have been discarded when Pagan and Faison fled from officers. During the search, a bronze 9mm Glock 43 with an extended magazine and an auto sear attached (fully automatic) was located in the backyard of [***] Lincoln Street. This backyard is adjacent to the dirt path that Pagan and Faison ran down.

Pagan and Faison were transported to the York County Enforcement Center where they were interviewed. During the interview, Faison consented to a buccal swab for DNA. The firearm that was recovered was swabbed for DNA by Detective Perry. The swabs from the firearm and the swab from Faison were sent to the Pennsylvania State Police Lab for comparison. The lab was able to determine that Faison's DNA was on the firearm.

On 9/4/2019, Faison plead [*sic*] guilty to aggravated assault and possession of a firearm by a minor, [thus] making him a person not to possess a firearm. At the time of the [May 11, 2022,] incident, Faison did not have a valid license to carry a firearm.

Criminal Complaint, filed 3/11/24, affidavit of probable cause.

On April 29, 2024, at trial court docket number CP-67-CR-0001542-2024 ("1542-2024"), which is the instant matter, the Commonwealth filed an Information charging Faison with one count of possession of a firearm prohibited and one count of prohibited offensive weapons.[4]

On August 21, 2024, Faison filed a counseled omnibus pre-trial motion. Therein, Faison sought the dismissal of all charges at trial court docket number 1542-2024 for the Commonwealth's violation of the compulsory joinder

_____

[4] The charge of firearms not to be carried without a license was dismissed and not included in the Information.

statute.[5]  Specifically, pointing to 18 Pa.C.S.A. § 110(1)(ii), Faison averred his "conviction for drug paraphernalia from Incident No. 56-22-003730 bars the Commonwealth's successive prosecution for possession of firearms prohibited and prohibited offensive weapons because they arose from the same criminal episode and were known to the prosecution."  Faison's Omnibus Pre-Trial Motion, filed 8/21/24, at 11.

On September 13, 2024, the Commonwealth filed a response to Faison's omnibus pre-trial motion.  Relevantly, the Commonwealth acknowledged that, on August 18, 2022, Faison entered a negotiated guilty plea to the charge of possession of drug paraphernalia in connection with the May 11, 2022, incident.  However, the Commonwealth noted that the Pennsylvania State Police Bureau of Forensic Services did not complete the DNA comparison analysis of Faison's buccal swabs and the swabs of the abandoned firearm until March 25, 2023.  The testing revealed that Faison's DNA was a match to the DNA on the abandoned firearm.  Accordingly, after obtaining the DNA results, the police filed the instant criminal complaint on March 11, 2024, and, thereafter, the Commonwealth filed an Information at docket number 1542-2024 charging Faison with the two firearm offenses.

---

[5] Faison also sought the suppression of evidence allegedly abandoned by him as he fled on foot.  However, the trial court dismissed the charges pursuant to the compulsory joinder rule, and the suppression issue is not before this Court.

The Commonwealth argued that it did not violate the compulsory joinder statute as it was unaware of the evidence proving Faison possessed the discarded firearm until after the prosecution at docket number 3225-2022 had concluded. Specifically, the Commonwealth alleged that it received the DNA comparison results in March of 2023, and, prior to this time, it was unaware that Faison had possessed the firearm at issue. In this vein, the Commonwealth noted the firearm was abandoned along the flight path of Faison and Pagan, neither man had been seen in possession of the firearm, and the police discovered three backplates[6] to the gun in Pagan's fanny pack when he was arrested on May 11, 2022.

Additionally, the Commonwealth argued that the charges at docket number 3225-2022 were not logically related to the firearm charges in the instant matter at docket number 1542-2024, and, thus, prosecution of the instant matter was not barred under Section 110 of the Crimes Code. The Commonwealth averred that, while the prosecution for the firearms offenses at docket number 1542-2024 "may include evidence of the flight from police, that evidence overlap is *de minimis*." Commonwealth's Response, filed 9/13/24, at 13. In this vein, the Commonwealth indicated the case related to

---

[6] A "backplate" is a slide cover plate, which can be removed from a Glock. N.T., 9/16/24, at 87. When a backplate is removed, "more likely than not an auto sear is attached [in its place]." *Id.* An auto sear is "placed on the back of usually Glock firearms or Glock style firearms. Essentially, what they do is make the gun fully automatic." *Id.*

the firearm offenses "will include testimony of [police] finding the gun, as well as expert testimony regarding Serology, DNA analysis, and ballistics analysis." *Id.*

On September 12, 13, and 16, 2024, the trial court held hearings on Faison's omnibus pre-trial motion. During the hearings, York City Police Officer Jeremy Fultz testified the parkway projects, particularly near Willis Run, are high crime areas. N.T., 9/16/24, at 21. He testified he was on duty and driving a police car with Probation Officer Rupp as a passenger on May 11, 2022, when Officer Fouad radioed that he saw Michael Pagan, for whom there was a felony warrant, standing in the area of 550 North Pershing Avenue. *Id.* at 22. Officer Fultz testified that several police cars, including the one that he was driving, converged on the scene, and Officer Fouad radioed that Pagan and another male (Faison) were fleeing. *Id.* at 26. Officer Fultz had no opportunity to encounter either Pagan or Faison, and he did not participate in the foot chase. *Id.*

York City Police Officer Peter Fouad testified he was conducting surveillance on May 11, 2022, when, at approximately 3:00 p.m., he saw Pagan and Faison "hanging out in the alleyway" near 550 North Pershing Avenue. *Id.* at 50. Officer Fouad knew there was a felony arrest warrant for Pagan, so he radioed for the other officers to take Pagan into custody. *Id.* at 52. Soon thereafter, a marked patrol car responded, and as soon as the duo

saw the patrol car, they fled. *Id.* at 54. Police officers apprehended Pagan and Faison.

York City Police Detective Christopher Thompson testified he was on duty on May 11, 2022, and traveling in an unmarked police vehicle near 550 North Pershing Avenue. *Id.* at 76. He noted the parkway housing project is located near this address, and it is a high crime area. *Id.* at 77. Detective Thompson testified that, after Officer Fouad radioed that Pagan and another man (Faison) were fleeing the scene, he saw the two subjects running down a path through the woods that leads to Willis Run. *Id.* at 80.

Detective Thompson testified the two subjects remained side by side throughout the chase, and as they ran between two houses, Detective Thompson saw the man, later identified as Faison, drop "a black fanny pack he had around his body." *Id.* at 81. The two subjects then ran into a residence, and the detective followed them inside. *Id.* At this point, Pagan and Faison were taken into custody. *Id.* Pagan was wearing a green fanny pack, and the police discovered therein crack cocaine, as well as three backing plates for a Glock style firearm. *Id.* at 87.

Detective Thompson indicated that, after the arrest of Pagan and Faison, multiple officers retraced the path of the foot chase, and a firearm was located in the backyard of a house along this path on Lincoln Street. *Id.* at 88.

On cross-examination, Detective Thompson confirmed that he filed a criminal complaint against Faison on May 12, 2022, charging him with

disorderly conduct and possession of drug paraphernalia. *Id.* at 103. He admitted that, when he filed the criminal complaint on May 12, 2022, he was aware that a firearm had been discovered along the two men's flight path; however, he did not charge Faison with any firearm offenses at this time. *Id.*

On redirect-examination, Detective Thompson indicated that, although the police knew a firearm had been discarded during the foot chase, they did not have information as to which suspect discarded it. *Id.* at 104. Detective Thompson noted that, at the time the criminal complaint was filed against Faison on May 12, 2022, the police believed it was more likely than not that Pagan had discarded the firearm due to his outstanding felony warrants, as well as the fact the backing plates were found in Pagan's fanny pack. *Id.* at 105. Detective Thompson clarified the police did not have sufficient information to charge Faison with possessory offenses related to the discarded firearm until after they received the DNA comparison results in May of 2023, which revealed that Faison's DNA matched DNA on the discarded firearm. *Id.* Accordingly, Detective Thompson then filed a criminal complaint against Faison in connection with his illegal possession of the firearm. *Id.*

On recross-examination, Detective Thompson admitted the police often file firearm charges against suspects without having DNA results; however, he noted "it depends on the circumstances." *Id.* at 106. He noted that, in the instant case, the police did not know which suspect discarded the firearm until

the DNA analysis was completed, and neither man had been seen in possession of a firearm at any time during the May 11, 2022, incident. *Id.*

York City Police Sargeant Christopher Perry testified he was the lead forensic evidence technician. *Id.* at 139. He indicated he took a buccal swab from Faison for DNA purposes on May 11, 2022, and the firearm was processed for DNA on July 20, 2022. *Id.* at 145, 156. The DNA samples were then sent to the Pennsylvania State Police Bureau of Forensic Services for testing. *Id.*

At the conclusion of the hearing, the trial court held the Commonwealth violated the compulsory joinder rule as codified in 18 Pa.C.S.A. § 110(1)(ii) when it filed the firearm charges docketed at 1542-2024 against Faison. That is, the trial court found the Commonwealth should have brought the charges at trial court docket numbers 3225-2022 and 1542-2024 in one case. The trial court concluded the Commonwealth's attempt to charge Faison with firearm offenses at docket number 1542-2024 after Faison pled guilty and was sentenced to the charges in 3225-2022 required dismissal of the charges in 1542-2024. By written order filed on September 16, 2024, the trial court specifically granted Faison's omnibus pre-trial motion relating to the compulsory joinder statute and dismissed all charges filed at 1542-2024.

The Commonwealth filed a timely notice of appeal indicating the trial court's order substantially handicaps or terminates the prosecution under Pa.R.A.P. 311(d).[7] All Pa.R.A.P. 1925 requirements have been met.

On appeal, the Commonwealth sets forth the following in its "Statement of the Questions Involved" (verbatim):

1) Whether the trial court erred when it found that the Defendant's prosecution for gun possession charges violated the compulsory joinder rule where the subsequent prosecution involves separate factual and legal issues that were unknown to the Commonwealth at the time of the initial prosecution?

Commonwealth's Brief at 4 (suggested answer omitted).

On appeal, the Commonwealth avers the trial court erred in granting Faison's omnibus pre-trial motion to dismiss the charges filed at trial court docket number 1542-2024 pursuant to the compulsory joinder rule as set forth in 18 Pa.C.S.A. § 110(1)(ii). Specifically, the Commonwealth avers the trial court erred in concluding the possessory firearm offenses at docket number 1542-2024 were known to the prosecuting officer at the time Faison pled guilty to the possession of drug paraphernalia charge at docket number 3225-2022. Further, the Commonwealth avers the trial court erred in concluding the current prosecution related to the possessory firearm offenses was based on

_____

[7] The Commonwealth's notice of appeal contains a typographical error and mistakenly identifies the order appealed from as entered on September 16, 2022. The Commonwealth filed an amended notice of appeal noting the correct filing date of September 16, 2024.

the same criminal conduct or arose from the same criminal episode as the former prosecution for the possession of drug paraphernalia.

We are cognizant that "[w]here the relevant facts are undisputed, the question of whether prosecution is barred by the compulsory joinder rule…is subject to plenary and *de novo* review." **Commonwealth v. Copes**, 295 A.3d 1277, 1279 (Pa.Super. 2023).

"Section 110 of the Crimes Code generally prohibits subsequent prosecution of a defendant for different crimes arising from the same criminal episode after the defendant has already been convicted or acquitted of criminal charges arising from that criminal episode." **Copes**, 295 A.3d at 1279 (citing 18 Pa.C.S.A. § 110). The compulsory joinder rule was designed to serve two distinct policy considerations: "(1) to protect a person accused of crimes from governmental harassment by being forced to undergo successive trials for offenses stemming from the same criminal episode, and (2) to ensure judicial economy." **Commonwealth v. Forrester-Westad**, 282 A.3d 811, 821 (Pa.Super. 2022) (citations omitted).

Here, Faison sought, and the trial court granted, dismissal of the charges at docket number 1542-2024 under 18 Pa.C.S.A. § 110(1)(ii), which provides:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109[8] of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

\*\*\*

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense[.]

18 Pa.C.S.A. § 110(1)(ii) (footnote added).

Our Supreme Court has provided a four-part test to analyze whether Subsection 110(1)(ii) precludes the Commonwealth from pursuing a subsequent prosecution:

(1) the former prosecution must have resulted in an acquittal or conviction;

(2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;

(3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and

(4) the current offense occurred within the same judicial district as the former prosecution.

***Commonwealth v. Perfetto***, 652 Pa. 101, 207 A.3d 812, 821 (quotation omitted). "Each prong of this test must be met for compulsory joinder to apply." ***Commonwealth v. Fithian***, 599 Pa. 180, 961 A.2d 66, 72 (2008).

_____

[8] Section 109 provides that "a plea of guilty accepted by the court" is included in the definition of "conviction." 18 Pa.C.S.A. § 109(3).

- 13 -

Initially, the Commonwealth avers the trial court erred in applying the third prong of the aforementioned test; namely, that the prosecutor was aware of the instant possessory firearm offenses against Faison before the commencement of Faison's guilty plea to the former charge of possession of drug paraphernalia. The Commonwealth acknowledges that Faison entered his guilty plea to the possession of drug paraphernalia charge at docket number 3225-2022 on August 18, 2022, and the instant firearm charges were not filed until March 11, 2024.

However, the Commonwealth argues that, without the DNA test results, which the prosecutor received from the Pennsylvania State Police Bureau laboratory on March 25, 2023, the prosecutor was unaware that Faison possessed the discarded firearm. Specifically, the Commonwealth notes that Faison and his cohort, Pagan, ran side by side down the same lengthy flight path, and no eyewitness saw either man in actual possession of a firearm. The firearm was later discovered in the backyard of a house along the flight path when the police conducted a sweep. While evidence in Pagan's fanny pack tied him to the handgun, aside from Faison's flight, the Commonwealth had no evidence tying Faison to the discarded handgun until the DNA results were provided to the Commonwealth.

Thus, the Commonwealth argues it was not aware that Faison possessed the firearm until the DNA test results revealed his DNA was on the firearm. Accordingly, the Commonwealth avers the trial court erred in concluding the

prosecutor was aware of the instant possessory firearm charges before the commencement of Faison's guilty plea to the former possession of drug paraphernalia charges.

In support of its argument, the Commonwealth points to our Supreme Court's opinion in *Commonwealth v. Geyer*, 546 Pa. 586, 687 A.2d 815 (1996).[9] Therein, a Pennsylvania State Trooper stopped a defendant for speeding, and during the stop, the defendant informed the trooper that his operating privileges were suspended. *See id.* The trooper issued a citation for driving in excess of the speed limit but did not, at this time, cite the defendant for driving while his operating privileges were suspended. *Id.*

The defendant pled guilty to the speeding violation and paid the fine. *Id.* Meanwhile, the trooper contacted the Pennsylvania Department of Transportation ("DOT") for certification of the defendant's license suspension,

---

[9] We note that, in *Geyer*, regarding the fourth prong of the aforementioned test, our Supreme Court interpreted the phrase "within the jurisdiction of a single court" to mean that all charges relevant to the compulsory joinder analysis must have been capable of adjudication in one court. *Id.* at 817 (explaining that the version of Subsection 110(1)(ii) in effect at that time did not bar a subsequent prosecution when a single court lacked jurisdiction to adjudicate all of the offenses at issue).

After the *Geyer* opinion, in 2002, the Legislature amended Subsection 110(1)(ii) by changing the language as it relates to the fourth prong of the compulsory joinder test. Specifically, the Legislature removed the phrase "was within the jurisdiction of a single court" and replaced it with the phrase "occurred within the same judicial district as the former prosecution." 18 Pa.C.S.A. § 110(1)(ii). Accordingly, *Geyer* has been superseded, in part, by the amended statute. However, as it relates to whether the prosecutor was aware of the instant charges before the commencement of the trial on the former charges, *Geyer* remains of precedential value.

and the trooper received the certification from DOT confirming the defendant's license suspension. *Id.* Accordingly, the trooper then issued a second citation charging the defendant with driving with a suspended license. *Id.* The defendant pled not guilty to this second charge, but he was convicted. *Id.*

On appeal, the defendant averred that the Commonwealth violated the compulsory joinder rule as codified in Section 110 of the Crimes Code when it brought the second prosecution (relating to driving with a suspended license) after the defendant had pled guilty in the first prosecution (relating to the speeding violation). In finding no merit to the defendant's claim, our Supreme Court focused on whether "the second offense was known to the prosecuting officer at the time of the first trial." *Geyer*, *supra*, 687 A.2d at 818.

In concluding that it was not known to the prosecuting officer, our Supreme Court held as follows:

> When [the defendant] pleaded guilty to the speeding violation on July 2, 1993, DOT had not yet issued confirmation of [the defendant's] license suspension. Although [the defendant] told the officer that his license was suspended at the time of the stop, Section 1543(d) of the Motor Vehicle Code, 75 Pa.C.S. § 1543(d) (driving while operating privilege is suspended or revoked),…require[s] the officer to verify the status of the driver's license with DOT before issuing a citation for driving while operating privileges are suspended. Thus, because the officer had not received DOT verification of [the defendant's] license suspension, the second offense was not "known" to him when he cited [the defendant] for the speeding violation. Therefore, Section 110 does not bar the subsequent prosecution for driving with a suspended license.

*Geyer*, *supra*, 687 A.2d at 818-19 (footnotes omitted).

- 16 -

The Commonwealth avers that, as in **Geyer** where the officer was unaware of the second offense until DOT issued verification of the defendant's license status, the officer in the case *sub judice* was unaware of the second offense regarding Faison's possession of the discarded handgun until the Pennsylvania State Police laboratory issued the DNA comparison findings. We agree with the Commonwealth's reasoning.

As the Commonwealth indicates, the firearm offenses at issue in the instant case at trial court docket number 1542-2024 involve possession as an element.[10] However, prior to receipt of the DNA evidence, the Commonwealth's sole evidence tying Faison to the firearm was his flight on the same path with Pagan, who possessed backplates to a firearm in his backpack. As the Commonwealth suggests, while such evidence alone may have produced a "suspicion" that Faison possessed the firearm, "suspicion" or "conjecture" do not make out a case for constructive possession or even that Faison knew about the firearm before it was discarded.[11] **See**

_____

[10] **See** 18 Pa.C.S.A. § 6105(a)(1) (indicating that a person convicted of certain offenses or whose conduct meets certain criteria "shall not possess…a firearm[.]"); 18 Pa.C.S.A. § 908(a) (indicating "[a] person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.").

[11] Where the suspect is not in actual physical possession of the firearm, the Commonwealth must prove constructive possession or joint constructive possession. "We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the
*(Footnote Continued Next Page)*

- 17 -

***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa.Super. 2018) ("If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession.") (citation omitted)).

In conclusion, we agree with the Commonwealth that the trial court erred in concluding the prosecutor was aware of the instant firearm offenses before the commencement of Faison's guilty plea on the former possession of drug paraphernalia offense. Thus, since each prong of the necessary test was not met, compulsory joinder does not apply.[12] ***Fithian***, ***supra***.  Accordingly, we conclude the trial court erred in granting Faison's omnibus pre-trial motion to dismiss pursuant to the compulsory joinder rule.

_____

intent to exercise that control." ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa.Super. 2018) (citation omitted). ***See Commonwealth v. Heidler***, 741 A.2d 213 (Pa.Super. 1999) (*en banc*) (holding the evidence was insufficient to show the defendant had joint constructive possession of a handgun in his girlfriend's purse while sitting in a car since there was no evidence demonstrating the defendant's power or intent to control the handgun).

[12] Given our holding, we need not address the Commonwealth's argument that the trial court erred in concluding "the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution[.]" ***Perfetto***, ***supra***, 207 A.3d at 821 (quotation omitted).

Order reversed. Case remanded for reinstatement of the charges and proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/18/2025