# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PA Fair Elections and Heather Honey,   :
      Petitioners     :
           :
     v.         :
           :
Pennsylvania Department of State   :
(Office of General Counsel),     :   No. 1512 C.D. 2023
      Respondent    :   Argued: February 5, 2025


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE LORI A. DUMAS, Judge
      HONORABLE STACY WALLACE, Judge
      HONORABLE MATTHEW S. WOLF, Judge


OPINION BY
JUDGE COVEY            FILED: May 2, 2025


    PA Fair Elections and Heather Honey (Honey)[1] (collectively, Petitioners) petition this Court for review of the Pennsylvania Department of State (Department), Office of General Counsel's November 21, 2023 Final Determination dismissing Petitioners' complaint brought pursuant to Section 1206.2 of the Pennsylvania Election Code (Election Code)[2] against the Department and the Secretary of the Commonwealth, Al Schmidt (Complaint). Essentially, the issue before this Court is whether the Office of General Counsel properly determined that the Department's treatment of voters who apply to register and vote under the

---

[1] Honey is a member and authorized representative of PA Fair Elections. *See* Reproduced Record at 147a.

[2] Act of June 3, 1937, P.L. 1333, *as amended*, added by Section 11 of the Act of December 9, 2002, P.L. 1246, 25 P.S. § 3046.2.

provisions of the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 52 U.S.C. §§ 20301-23011, is consistent with the Help America Vote Act of 2002 (HAVA).[3, 4] After review, this Court affirms.

On August 23, 2023, Petitioners filed the Complaint with the Department, alleging therein that the Department's Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications (Directive) violates HAVA. In accordance with Section 1206.2(c)(1) of the Election Code, the Department forwarded the Complaint to the Governor's Office of General Counsel on or about August 28, 2023. On September 12, 2023, the Department filed a written response pursuant to Section 1206.2(c)(2) of the Election Code. In the Complaint, Petitioners requested an informal hearing to which a complainant is entitled under Section 1206.2(c)(3) of the Election Code. Following a prehearing scheduling order, each party filed a prehearing memorandum, along with witness and exhibit lists, on November 3, 2023. The Department's Deputy General Counsel (Deputy General Counsel) conducted a hearing on November 6, 2023. On November 21, 2023, the Department issued its

---

[3] 42 U.S.C. §§ 15301-15545.

[4] In their Statement of Questions Involved, Petitioners presented two issues: (1) whether Section 303(a)(5) of HAVA requires those who apply to register and vote under the provisions of UOCAVA to provide a driver's license, last four digits of their Social Security number, or other form of identification on the application and for election officials to determine if the applicant is *otherwise qualified* by attempting to verify the information provided on the application at some point before their vote is counted; and (2) whether the Department's Directive concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications excluding purportedly UOCAVA-eligible applicants from providing any identification information violates Section 303(a)(5)(A)(i) of HAVA, 52 U.S.C. § 21083(a)(5)(A)(i), i.e., the requirement that a "voter registration application may not be accepted or processed by a state unless the application includes" a driver's license number if the applicant has been issued one or a partial Social Security number if a person has not been issued a driver's license number and that the state verify the accuracy of information submitted on voter registration applications before voting in federal elections. *See* Petitioners' Br. at 2-3. Petitioners' arguments are encompassed in the issue as stated above.

Final Determination, concluding that Petitioners failed to show that the Department's Directive violates HAVA with respect to those who vote under UOCAVA and dismissed Petitioners' Complaint. Petitioners appealed to this Court.[5]

Initially, the Department issued the Directive,[6] which instructs, in relevant part: "**The Directive underscores that** . . . **voter registrations may *not* be rejected based solely on a non-match between the applicant's identifying numbers on their application and the comparison database numbers**." Reproduced Record (R.R.) at 23a (all emphasis in original). The Directive further instructs: "**[I]f there are no independent grounds to reject a voter registration application other than a non-match**, **the application may *not* be rejected and must be processed like all other applications**." *Id*. (all emphasis in original).

Petitioners argue that Section 303(a)(5) of HAVA requires voter registration applicants to provide identification information and requires state election officials to attempt to match that identification information to official government databases. *See* 52 U.S.C. § 21083(a)(5). Petitioners assert that HAVA is a federal statute passed by Congress, which, under the United States Constitution's Supremacy Clause[7] sets a floor, not a ceiling, that expressly requires all voter

---

[5]       Appellate review of agency decisions "is restricted to determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether necessary findings of fact are supported by substantial evidence." *Dep't of Lab*[.] *& Indus. v. Workers' Comp. Appeal Bd. (Crawford & Co.)*, . . . 23 A.3d 511, 514 ([Pa.] 2011).

*Shrom v. Pa. Underground Storage Tank Indemnification Bd.*, 292 A.3d 894, 907 (Pa. 2023). "When considering pure questions of law, our standard of review is *de novo* and our scope of review is plenary." *Velasquez v. Miranda*, 321 A.3d 876, 891 (Pa. 2024).

[6] The date the Department issued the Directive does not appear in the record.

[7] The Supremacy Clause states:

3

applicants to provide certain information. Petitioners further contend that while there is an exemption for UOCAVA-eligible voters who register by mail not to have to send a photocopy of their identification with their ballot, that exemption does not excuse those applicants from providing identification information at some point before voting in a federal election. *See* 52 U.S.C. § 21083(a)(5). Finally, Petitioners claim that other states have interpreted HAVA to require applicant identity verification for all and have provided special instructions to their local officials on how to verify UOCAVA applicant identities when not provided on the Federal Post Card Application (FPCA),[8] unlike Pennsylvania, where the Directive procedure threatens to discount the value of votes from those who are genuine voters, which is a form of disenfranchisement. Petitioners proclaim that allowing potentially ineligible individuals to receive a ballot by email, vote, return it, and have it counted without any verification of their identity or eligibility, dilutes the votes of all legitimate voters, including citizens who are overseas, particularly the men and women who bravely serve our country.

The Department rejoins that HAVA requires voter registration applicants to provide either their driver's license number or the last four digits of their Social Security number for purposes of matching that number against the

---

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2.

[8] *See* Section 3506(a) of the Uniform Military and Overseas Voters Act, 25 Pa.C.S. § 3506(a) ("A covered voter who is registered to vote in this Commonwealth may apply for a military-overseas ballot using either the absentee ballot application provided under the Election Code or the [FPCA].").

4

database maintained by the state motor vehicle authority to verify the accuracy of that information when assigning a unique identifier to each registrant and creating a computerized list of registered voters. The Department further retorts that HAVA's plain language makes clear that matching these numbers with existing database numbers is not a prerequisite for registration - HAVA actually has a *special rule* requiring states to assign a unique number for registration purposes for those applicants who lack both a driver's license number and a Social Security number. In addition, the Department maintains that HAVA specifies that determining the sufficiency of a voter's registration application is a matter of state law. The Directive, consistent with HAVA, simply states that county registration commissions cannot reject a UOCAVA voter's registration application for the sole reason that an applicant's numbers on their application do not match comparison database numbers. The Department proclaims that the Department's UOCAVA voter procedures are fully consistent with HAVA, UOCAVA, and the Election Code. The Department emphasizes that HAVA and the Election Code exempt UOCAVA voters from certain identification requirements that apply to other voters as a prerequisite to having their votes count.

The Pennsylvania Supreme Court has instructed:

Our interpretation of [a statute] . . . is guided by the polestar principles set forth in the Statutory Construction Act [of 1972 (SCA)], 1 Pa.C.S. §[§] 1501[-1991], which has as its paramount tenet that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." [Section 1921(a) of the SCA, 1 Pa.C.S.] § 1921(a). As we have often recognized, "[t]he General Assembly's intent is best expressed through the plain language of the statute." *Commonwealth v. Brown*, . . . 981 A.2d 893, 897 ([Pa.] 2009); *Commonwealth v. McCoy*, . . . 962 A.2d 1160, 1166 ([Pa.] 2009). Therefore, when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning. 1

Pa.C.S. § 1921(b); *Commonwealth v. Kelley*, 801 A.2d 551, 554 ([Pa.] 2002). We ascertain the plain meaning of a statute by ascribing to the particular words and phrases the meaning which they have acquired through their common and approved usage, and in context. [*See* Section 1903 of the SCA,] 1 Pa.C.S. § 1903. Only in instances where the words of a statute are not explicit, or are ambiguous, do we consider the construction factors enumerated in [Section] 1921(c) [of the SCA]. *McCoy*, 962 A.2d at 1166; *Commonwealth v. Fithian*, . . . 961 A.2d 66, 74 ([Pa.] 2008); *see also* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

*Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022).

Section 303(a)(5)(A) of HAVA mandates, in pertinent part:

[(**i**)] Except as provided in clause (ii), notwithstanding any other provision of law, an application for voter registration for an election for [f]ederal office may not be accepted or processed by a [s]tate unless the application includes--

(**I**) in the case of an applicant who has been issued a current and valid driver's license, the applicant's driver's license number; or

(**II**) in the case of any other applicant (other than an applicant to whom clause (ii) applies), the last [four] digits of the applicant's [S]ocial [S]ecurity number.

(**ii**) **Special rule for applicants without driver's license or [S]ocial [S]ecurity number**

If an applicant for voter registration for an election for [f]ederal office has not been issued a current and valid driver's license or a [S]ocial [S]ecurity number, the [s]tate shall assign the applicant a number which will serve to identify the applicant for voter registration purposes. To the extent that the [s]tate has a computerized list in effect under this subsection and the list assigns unique identifying numbers to registrants, the number assigned under this clause shall be the unique identifying number assigned under the list.

52 U.S.C. § 21083(a)(5)(A).

Section 303(b)(2) of HAVA provides:

**Requirements [for voters who register by mail]**

**(A) In general**

An individual meets the requirements of this paragraph if the individual--

**(i)** in the case of an individual who votes in person--

**(I)** presents to the appropriate [s]tate or local election official a current and valid photo identification; or

**(II)** presents to the appropriate [s]tate or local election official a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or

**(ii)** in the case of an individual who votes by mail, submits with the ballot--

**(I)** a copy of a current and valid photo identification; or

**(II)** a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter.

52 U.S.C. § 21083(b)(2).

Section 303(b)(2) of HAVA does not apply to a person who is "entitled to vote by absentee ballot under [UOCAVA.]" 52 U.S.C. § 21083(b)(3)(C)(i). Section 102(a)(1) of UOCAVA mandates that each state shall "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for [f]ederal office[.]" 52 U.S.C. § 20302(a)(1).

The Directive, in its entirety, explains:

Pursuant to Section 1803(a) of [what is commonly referred to as the Voter Registration Act], 25 Pa.C.S. § 1803(a), the following Directive is issued by the [Department] to clarify and specify legal processes relating to HAVA-matching of drivers' license numbers (or [Pennsylvania Department of Transportation identification] card numbers) and Social Security numbers when voters submit

7

new voter registration applications or an application to reactivate a cancelled record.

**This Directive underscores that Pennsylvania and federal law are clear that voter registrations may *not* be rejected based solely on a non-match between the applicant's identifying numbers on their application and the comparison database numbers**.

As stated in the [Department's] August 9, 2006 *Alert Re: Driver's License and Social Security Data Comparison Processes Required by* [*HAVA*], HAVA requires only the following:

(1) that all applications for new voter registration include a current and valid [Pennsylvania] driver's license number, the last four digits of the applicant's [S]ocial [S]ecurity number, or a statement indicating that the applicant has neither a valid and current [Pennsylvania] driver's license or [S]ocial [S]ecurity number; and

(2) that voter registration commissions compare the information provided by an applicant with the [Pennsylvania] Department of Transportation's driver's license database or the database of the Social Security Administration.

HAVA's data comparison process "was intended as an administrative safeguard for 'storing and managing the official list of registered voters,' and not as a restriction on voter eligibility."

*Wash*[.] *Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1268 (W.D. Wash. 2006).

**Counties must ensure their procedures comply with state and federal law**, **which means that if there are no independent grounds to reject a voter registration application other than a nonmatch**, **the application may *not* be rejected and must be processed like all other applications**.

R.R. at 23a (all emphasis in original).

8

Here, the Deputy General Counsel declared:

> Nothing in **Section 303(a)** [**of HAVA**] requires the verification obligation at the registration stage that [Petitioners] seek to impose on the Department. The plain text requires only that registrants submit their driver's license number or the last four digits of their Social Security number - it **does not require any further documentation or matching between name and number at this stage**. *See* 52 U.S.C. § 21083(a)(5)(A)(i). Any attempt to read a matching requirement into Section 303(a) [of HAVA] is belied by the "[s]pecial rule" for those without a driver's license or Social Security number, which requires only that the state "assign the applicant a number." *See* 52 U.S.C. § 21083(a)(5)(A)(ii). **If Congress intended to require states to use the information submitted at the registration stage for verification purposes**, **it would have required every voter to submit some type of verifiable identification**. But **it did not**. Instead, **the purpose of Section 303(a)** [**of HAVA**] **is that it provides states with the tools to assemble a complete**, **accurate**, **and non-redundant list of registered voters**. *See Reed*, 492 F. Supp. 2d at 1268 (finding that Congress intended the Section 303(a) [of HAVA] list to be "an administrative safeguard for 'storing and managing the official list of registered voters,' and not as a restriction on voter eligibility"). The verification or matching obligation on which [Petitioners] base their claim is not in the statutory text and is ancillary to the statutory purpose.

Dep't Final Determination at 7-8 (emphasis added; footnote omitted). This Court discerns no error in the Deputy General Counsel's reasoning. A thorough review of the relevant HAVA provisions, as well as the relevant UOCAVA provision, makes it clear that the Office of General Counsel properly determined that the Department's treatment of voters who apply to register and vote under the provisions of UOCAVA is consistent with HAVA. Accordingly, the Department properly dismissed Petitioners' Complaint.

9

For all of the above reasons, the Department's Final Determination is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PA Fair Elections and Heather Honey,  :
                Petitioners  :
                                         :

                 v.  :

Pennsylvania Department of State  :
(Office of General Counsel),  :   No. 1512 C.D. 2023
                 Respondent  :

 

AND NOW, this 2nd day of May, 2025, the Pennsylvania Department of State, Office of General Counsel's November 21, 2023 Final Determination is affirmed.

_____
ANNE E. COVEY, Judge